UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SCOTT,<br>        Plaintiff,<br>v.<br>R. GARCIA,<br>        Defendant. | Case No. 25-cv-00435-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 13 |

Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that on August 28, 2024, Salinas Valley State Prison ("SVSP") correctional officer R. Garcia used excessive force on him, in violation of the Eighth Amendment. Dkt. Nos. 1, 5. Defendant Garcia has filed a motion for summary judgment. Dkt. No. 13. Plaintiff has not filed an opposition, and the deadline to do so has passed. For the reasons set forth below, the Court GRANTS defendant Garcia's motion for summary judgment. Dkt. No. 13.

**BACKGROUND**

The following facts are undisputed. On August 28, 2024, at approximately 12:53 p.m., Plaintiff was walking around SVSP B Yard patio. He had gone to pill line and was on his way to the law library to make copies and get papers that he had requested. Correctional officers De La Torre and Martinez and defendant Garcia informed Plaintiff that he could not go to the law library because, at that time, the law library was only available to workers and closed to all other inmates. Correctional officers De La Torre and Martinez and defendant Garcia ordered Plaintiff to return to his housing unit. Plaintiff was on his way to his housing unit, but then decided to take a long lap around the yard. As he was walking, Plaintiff decided that defendant Garcia and officers De La Torre and Martinez's reasoning for denying him access to the law library was invalid. Plaintiff

1  decided to talk to a lieutenant or captain. Plaintiff then sat down on the exercise workout bars on
2  the yard. Correctional officers De La Torre and Martinez and defendant Garcia were on the yard,
3  ordering inmates, including Plaintiff, to return to their housing unit. All inmates except Plaintiff
4  returned to their housing unit. Officer De La Torre ordered Plaintiff to return to his housing unit,
5  but Plaintiff ignored the order because he believed that they were not following protocol, and that
6  he should speak to "one of the higher ups." Officer De La Torre then asked Plaintiff, "What's
7  going on?" Plaintiff stated that he was keeping his hands down by his side so that that the officers
8  would not perceive him as a threat. Officer De La Torre told Plaintiff, "I get the whole thing, I
9  get it." Plaintiff requested to speak to a captain. Defendant Garcia then told Plaintiff, "Okay, at
10 this time, I want you to put your hands behind your back for my safety and your safety, and the
11 safety of the institution. I'm going to place you in handcuffs, do you understand me?" Defendant
12 Garcia began walking towards Plaintiff and repeated, "Ok, so go ahead and put your arms behind
13 your back." Plaintiff asked, "What for?" and Officer De La Torre responded, "You're not obeying
14 an order to go into your cell." Plaintiff refused to put his arms behind his back to be cuffed
15 because he believed that cuffing was not appropriate where he was not being threatening and had
16 asked to see a superior. Dkt. No. 13-2 ("Martinez Decl."), ¶¶ 3-4; Dkt. No. 13-5 ("De La Torre
17 Decl."), ¶¶ 3-5; Dkt. No. 13-6 ("Garcia Decl."), ¶¶ 3-4; Dkt. No. 13-4 at 14-17. The parties'
18 account as to what happened next differ. Defendant Garcia has provided video footage of the
19 relevant event. The Court first recounts Plaintiff's account of the relevant event, and then
20 describes the video footage.
21     *Plaintiff's Allegations*
22     Plaintiff was not resisting and was sitting still with his hands in his lap. Defendant Garcia
23 tried to grab Plaintiff. In response, Plaintiff moved forward, looked back over his left shoulder,
24 and asked defendant Garcia what he was doing. Defendant Garcia tried to grab Plaintiff's left
25 arm, and then put his right arm around Plaintiff's neck area. Dkt. No. 13-4 at 19. Defendant
26 Garcia then put Plaintiff in a choke hold, dragged him to the ground, and started slamming his
27 head into the ground, resulting in severe pain in Plaintiff's neck, back and head. Dkt. No. 1.
28 //

*Video Footage, Dkt. No. 14*

Defendant Garcia walked behind Plaintiff, ordered Plaintiff to put his hands behind his back, and reached for Plaintiff's left arm. Officer Martinez walked towards Plaintiff's right side. Plaintiff did not comply with the order to submit to handcuffs. Instead, Plaintiff leaned his body forward, away from defendant Garcia; tensed his arm muscles; and clasped his hands together in front of his body. Officer Martinez moved forward and grabbed Plaintiff's right forearm with his right hand and placed his left hand on Plaintiff's shoulder blade. Defendant Garcia reached forward and put his left arm around Plaintiff's left arm and put his right hand on Plaintiff's left hand. Defendant Garcia firmly pulled Plaintiff's left arm behind his back to be handcuffed while placing his right hand on Plaintiff's left bicep to guide Plaintiff's left hand behind his back. Defendant Garcia again ordered Plaintiff to stop resisting and instructed Officer De La Torre to put in a call for a resistive inmate. Officer De La Torre then used his personal radio to notify the institution, "Central Patrol be advised, resistive inmate, bravo yard." Officer Martinez then grabbed Plaintiff's legs with both hands and applied downward pressure.

Plaintiff continued to keep his hands locked together and pull away from defendant Garcia. Plaintiff then grabbed defendant Garcia's left forearm with his right hand in an attempt to break defendant Garcia's grip. Officer Martinez grabbed Plaintiff's right arm with his left hand and pulled Plaintiff's hand away from defendant Garcia's arm. Defendant Garcia put his right arm around Plaintiff's head, with his hand on Plaintiff's right cheek, and pulled Plaintiff back towards him. Plaintiff leaned away as defendant Garcia pulled, and the parties swung back and forth. Officer De La Torre used both hands to pull Plaintiff's right arm asway from the exercise bar. As defendant Garcia pulled Plaintiff off the exercise bar, Plaintiff broke his hands apart and grabbed the exercise bar frame with his left hand. Officers De La Torre and Martinez attempted to pry Plaintiff's left hand off the frame of the exercise bar while defendant Garcia had his arms locked around Plaintiff's left arm in an attempt to break Plaintiff's grip on the exercise bar frame. Officers De La Torre and Martinez and defendant Garcia repeatedly instructed Plaintiff to stop resisting. Plaintiff responded that he was not resisting and that his arms were in front of him. The officers repeatedly instructed Plaintiff "Open hands," and directed him to put his hands

behind his back.

Defendant Garcia placed his chest on Plaintiff's back, using his body weight to subdue Plaintiff. Defendant Garcia placed his left hand on Plaintiff's left arm, and looped his right arm over Plaintiff's right shoulder and under Plaintiff's right arm to gain control of Plaintiff's left arm. At this point, Plaintiff was hanging face down over the exercise bar and twisted to the left with his head near the ground. Officer De La Torre placed handcuffs on Plaintiff's right wrist. Plaintiff complained that it hurt. After Plaintiff's right wrist was cuffed, defendant Garcia got off Plaintiff and, while still kneeling next to Plaintiff, assisted officers Avila and De La Torre in handcuffing Plaintiff's left hand. Plaintiff asked, "What are you doing?" and Officer De La Torre responded, "Putting you in handcuffs, that's what we told you in the beginning." The officers finished handcuffing Plaintiff, lifted Plaintiff to a standing position, and the incident ended.

During the struggle, defendant Garica's body worn camera fell. Plaintiff asked why defendant Garcia had knocked the camera off, and Officer De La Torre responded that the camera fell off. Plaintiff stated that he hoped cameras were catching the incident, and officers responded that the cameras were on.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

4

1   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial
2   burden of identifying those portions of the record that demonstrate the absence of a genuine issue
3   of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the
4   pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and
5   admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'"  *See*
6   *id.* at 324 (citing Fed. R. Civ. P. 56(e)).  "A scintilla of evidence or evidence that is merely
7   colorable or not significantly probative does not present a genuine issue of material fact"
8   precluding summary judgment.  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.
9   2000).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor.  *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020).  If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact.  *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence.  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

## II. Legal Standard for Excessive Force Claim

The treatment a convicted prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted).  Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial determination is whether force was applied in a good-faith effort to maintain or restore discipline, or was applied maliciously and sadistically to cause harm.  *Hudson v.*

*McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 317 (1986)). In making this determination, a court may evaluate the need for application of force; the relationship between that need and the amount of force used; the extent of any injury inflicted; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *see also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

**III.   Analysis**

Although the Court must view the record in the light most favorable to Plaintiff, here the Court may properly view the facts in the light depicted by the videos to the extent that the footage and audio blatantly contradict Plaintiff's version of events. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) ("for purposes of ruling on a motion for summary judgment, a district court may properly view the facts in the light depicted by bodycam footage and its accompanying audio, to the extent the footage and audio blatantly contradict testimonial evidence") (applying rule set forth in *Scott v. Harris*, 550 U.S. 372 (2007), to other types of evidence capable of objectively disproving witness testimony). Plaintiff has not disputed the accuracy or authenticity of these videos. Videos of the relevant events, Dkt. No. 14, contradict Plaintiff's version of the events. The videos show that Plaintiff refused to follow orders to return to his housing unit and to be handcuffed, refused to be handcuffed, and physically resisted the attempts by defendant Garcia and other correctional officials to handcuff him. The videos also show that defendant Garcia used reasonable force to place Plaintiff in handcuffs. Defendant Garcia did not place Plaintiff in a chokehold, did not drag Plaintiff to the ground, and did not slam Plaintiff's head into the ground. *See generally* Dkt. No. 14. The videos show that defendant Garcia used force in a good-faith effort to maintain and restore discipline; and that defendant Garcia used only the force necessary to handcuff Plaintiff so that the officers could return Plaintiff to his housing unit. The Court therefore finds that defendant Garcia did not use excessive force in

6

handcuffing Plaintiff on August 28, 2024, and GRANTS summary judgment in favor of defendant Garcia.

### IV. Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests — "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability who perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "'swiftly and firmly'" in situations where the rules governing their actions are often "'voluminous, ambiguous, and contradictory.'" *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citing *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.* To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Because there was no violation of Plaintiff's constitutional rights, as explained above, there is no need for any further inquiry.

## CONCLUSION

The Court GRANTS defendant Garcia's motion for summary judgment. Dkt. No. 13. The Clerk shall enter judgment in favor of defendant Garcia and against Plaintiff; deny all pending

motions as moot;[1] and close the case.

This order terminates Dkt. Nos. 13, 24.

**IT IS SO ORDERED.**

Dated: 12/17/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[1] Eleven months after discovery commenced and four months after defendant Garcia filed his summary judgment motion, Plaintiff filed a pleading titled "Motion to Compel," seeking to depose an unnamed I.S.U. officer and to require the I.S.U. officer to produce at the deposition any videos of the August 28, 2024 incident. Dkt. No. 24. This discovery request is moot as the Court has granted summary judgment in favor of defendant Garcia. Moreover, defendant Garcia has already affirmed under oath that Plaintiff has been provided with all videos of the August 28, 2024 incident. Plaintiff has not proffered any evidence suggesting that defendant Garcia lied in his discovery response or is otherwise withholding relevant evidence. And as detailed in this order, the video footage of the incident in the record is dispositive of Plaintiff's claim.

8